## JOHN H. UNLAND ET AL. V. MCCORMICK HARVESTING MACHINE COMPANY.

### FILED MARCH 17, 1898. No. 7881.

Principal and Agent: CONSTRUCTION OF CONTRACT: LIABILITY OF
AGENT FOR PURCHASE PRICE OF PROPERTY SOLD. A contract be-
tween a harvesting machine company and its agents for the sale
of its machines on commission provided that the agents should
settle for all machines sold either by cash or by note at the time
of their delivery, and if the agents should deliver any machine
for use in the field or permit its use before it should be fully paid
for by cash or note, the agents should be liable for its price. It
was also provided that all notes should be made payable to the
order of the company and that all moneys or notes should be re-
ceived as its agents and remitted to it. A form of contract where-
under the machines were sold provided that if after one day's
trial they did not work, time should be allowed to send a person
to put them in order. If they still did not work well, they might
be returned and the purchase money would be refunded. *Held*,
That the trial contemplated by the sales contract was to be after
the machine had been paid for or notes given for the purchase
money, and that the agents were liable for the price of machines
delivered for such trials without first taking the money or notes.

ERROR from the district court of Lancaster county.
Tried below before HALL, J. *Affirmed.*

*J. H. Grimm, W. A. Leese,* and *E. W. Metcalfe,* for plain-
tiffs in error.

*Ricketts & Wilson, contra.*

IRVINE, C.

A contract existed between the McCormick Harvesting
Machine Company and the plaintiffs in error, Unland &

Kubicek, whereby the latter sold on commission harvesting machines and other goods for the harvesting machine company. This action was brought by the harvesting machine company for the price of five machines which it was alleged that Unland & Kubicek had sold contrary to the terms of their contract and for which it was claimed they had thereby rendered themselves liable. In the district court the harvesting machine company was successful, and Unland & Kubicek seek a review of the proceedings.

There are 130 assignments of error. Some of these relate to the giving and refusal of instructions, but in the motion for a new trial the assignment with reference to this subject is of the character which has so frequently been held to preclude a review of each instruction separately. Some of the instructions given were manifestly correct, while one of those refused submitted to the determination of the jury the whole subject of the construction of the written contract between the parties. It was therefore correctly refused. Our investigation of the instructions can go no further.

Numerous assignments relate to the admission of evidence which it is asserted was irrelevant. In the brief attention is not called to any of these assignments and they must therefore be taken as waived.

Nearly all the assignments, however, relate more or less directly to the construction of the contract, and that is the only matter discussed specifically. This contract, after appointing the defendants agents for the sale of plaintiff's goods in certain designated territory, provides that the defendants agree to certain things, among them the following: "To be governed by the printed instructions on the back of this contract, and the instructions of the McCormick Harvesting Machine Company and their general agent. * * * To deliver, set up, and fairly start every machine sold, and to instruct the purchaser how to work it in different kinds and conditions of grain and grass. * * * To draw all notes taken

on the sale of said machines * * * payable to the order of the McCormick Harvesting Machine Company. * * * To sell all machines * * * for such prices and on such terms only as shall be prescribed by the said company or their general agent. * * * To settle for machines sold either by cash or note at the time of delivery, and in no case to warrant machines other than as specified in the regular warranty furnished by said company, and if the agent shall deliver any machine for use in the field or permit the use of a machine before it is fully settled for by cash or note, said agent will account and pay to said company, on demand, full price of said machine, together with interest from date of sale first next, and waive all claims under the warranty; and further agree to pay to said first party for any costs or expenses incurred on said machine." There was a further agreement that all moneys, notes, or other securities taken for machines were to be received by the defendants as agents for the plaintiff, and that they were to promptly remit the whole thereof to the plaintiff, commissions not to be deducted, but to be paid at settlement. Among the printed instruction referred to in the contract was one requiring the agents to give to each purchaser one of plaintiff's printed warranties, "which will be a sufficient guaranty that the machine will work as represented." From the forms used for contracts of purchase it seems that the machines are warranted by the manufacturers to be well made, of good material, and durable with proper care. Further, "if upon one day's trial the machine should not work well, the purchaser shall give immediate notice to said McCormick Harvesting Machine Company, or their agents, and allow time to send a person to put it in order. If it cannot then be made to work well, the purchaser shall return it at once to the agent from whom he received it, and his payment (if any has been made) will be refunded. Continuous use of the machine, or use at intervals through harvest season, shall be deemed an acceptance of the machine."

It is undisputed that the machines sued for by the agents' consent got out of their actual possession and into the possession of the purchasers, and were in fact used to some extent in the field. It is also undisputed that they were not prior thereto settled for either by notes or in cash. The plaintiff contends that these facts create a liability. The defendants contend that they retained at least constructive possession, that the true intent of the contract, taken together with the form of sales contracts used, was that a prospective purchaser might make a one day's trial of the machine, and in case it did not work properly, retain it in his possession until an expert came to repair it, and that if it did not then work he must return it; that a delivery for that purpose was not such a one as the contract contemplates as rendering the agent liable. His liability would only attach if he permitted the use of the machine or its retention by the purchaser after such trial without taking pay or notes for the purchase money. We think the former construction correct. Taking the whole contract, together with the contracts of sale, it seems clear that the very thing which plaintiff sought to avoid was its machines getting into the hands of prospective purchasers for trial or otherwise before full settlement should have been made. It insisted that before the machine should be delivered for use payment by cash or note should be made. It bound its agents to then deliver the machine, set it up, start it, and instruct the purchaser as to its use. To protect the purchaser it made a warranty, which it bound the agent to deliver in each case of sale, whereby, if the machine did not work, an opportunity was given to put it in order. If it still did not work, it might be returned and payments would be refunded. In other words, the company insisted upon a complete contract in the first instance, with the purchase price paid or evidenced by notes, leaving the purchaser to rely on the warranty. To enforce sales in this manner and to prevent agents from delivering machines for trial

or on conditional contracts of sale it was provided that unless payment should be made or notes should be so first taken, the agent should be liable for the price of the machine. It is said that machines could not be sold on such terms. That was a matter for the parties to consider when they made the contract. The plaintiff had a right to select its own method of making sales. If it chose to sell on such terms or not at all, that was its affair. If the defendants were not willing to restrict themselves to such terms they should not have contracted to do so. Having so contracted they were not at liberty to depart from those terms; and when they did depart, they rendered themselves liable for the price of the machines. Construing the contract as we have indicated the verdict was right in any view of the evidence.

AFFIRMED.